GREAT AMERICAN RESERVE INSURANCE COMPANY, Appellant,

v.

Sam Milton LANEY, Appellee.

No. 17352.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 1, 1972.

Rehearing Denied Jan. 5, 1973.

**482**

Brundidge, Fountain, Elliott & Churchill, and Gary W. Maxfield, Dallas, for appellant.

Coleman, Whitten & Philips and Earl L. Coleman, Denton, for appellee.

OPINION

LANGDON, Justice.

This was a suit by appellee on a policy of disability insurance issued by appellant. Trial was to the court without a jury. Judgment was entered in favor of appellee for $37,925.60, plus 12% statutory penalty and attorney's fees. Appellant excepted to the judgment and the findings of the court included therein and gave notice of its appeal which is based upon eight points of error, five of which are insufficient evidence points.

We affirm.

In order to resolve the questions presented on this appeal we have carefully examined the entire record in this cause. We are also required on this appeal to consider only such evidence, if any, which viewed in the most favorable light supports the court's findings and its judgment based thereon. It was the court's province to judge the credibility of the witnesses and the weight to be given their testimony. The court was within its province to resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. The trial court, as the fact finder, is not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence presented to it.

Our review of the record reflects considerable conflict in the evidence. Findings by the court contrary to the ones made by it would find support in the record. In our opinion the findings made by the court have ample support in the record.

Appellant's first two points attacking the sufficiency of the evidence to support the finding that Laney was totally and continuously disabled for the period from May 22, 1962, to February 11, 1968, will be examined in the light of the above rule, i. e., considering only such evidence which viewed in the most favorable light will support

the findings made by the trial court and disregarding all evidence to the contrary.

The policy was issued effective June 19, 1952, and was in full force and effect subject to the provisions of the policy until February 11, 1968. Appellant made full payments under the policy from May 18, 1955, until May 22, 1962.

Only benefits, if any, accruing between May 22, 1962, and February 11, 1968, are in issue.

The policy provides benefits for both accident and sickness. There is no contention by appellee that any benefits were payable under the accident portion of the policy. The applicable sickness provisions of the policy provide as follows:

"LOSS OF TIME BY SICKNESS

"(Confining Sickness)

"ARTICLE II. Section 1. If such sickness shall totally and continuously disable and necessarily confine the Insured continuously within doors and shall require the personal care and regular attendance of a legally qualified physician or surgeon, the Company will pay, beginning after the number of days excepted in the schedule, the monthly indemnity specified in the schedule and continuing as long as the Insured remains so disabled and so confined up to the Insured's attained age of Sixty-Five, or a period of twenty-four months whichever period is greater.

"(Non-Confining Sickness)

"Section 2. Or, if such sickness shall totally and continuously disable the Insured, but shall not necessarily continuously confine the Insured within doors, and shall require the personal care and regular attendance of a legally qualified physician or surgeon, the Company will pay, beginning after the number of days excepted in the schedule, the monthly indemnity specified in the schedule, and continuing as long as the Insured remains so disabled, not to exceed twenty-four consecutive months for any period of sickness."

Laney testified that he had not engaged in any occupation or activities from the standpoint of work since his heart attack. He had not felt like doing any work since he had his initial heart attack in May of 1955. He had not done any work of any kind that produced any money or engaged in any physical activity since that date. He had not felt like doing any kind of work even after he became 65 years of age on February 11, 1968, when the proceeds of the policy terminated.

The undisputed evidence showed that the appellee, prior to his heart attack in 1955, was extremely active in his work. He enjoyed good health. He was extremely active in civic affairs. He served as President of the School Board of the Denton Public Schools. After the heart attack in 1955, which Dr. Norgaard described as being a myocardial infarction, coronary occlusion, and a serious condition, the evidence shows that Mr. Laney never got well. He had repeated attacks of angina, pain in the chest, and shortness of breath upon the least exertion. He could not carry out the wishes of his doctor to take more exercise and do more walking. He was compelled to go into virtual seclusion, to spend all of his time close to his bed or chair and give up all outside activities. His condition has progressively grown worse.

■ The facts and circumstances in the record that he could not work, did not feel like working, and had not worked a day since his initial attack in 1955 constitutes ample evidence to support the court's finding that Laney was totally disabled during all of such period of time from 1955 so as to entitle him to indemnity for "loss of time by sickness."

Appellant's first and second points are overruled.

By points three and four the appellant asserts that there is no evidence or insuf-

ficient evidence to support a finding that Laney was necessarily confined continuously within doors, within the meaning of the policy in question during the period from May 22, 1962, through February 11, 1968. These points are discussed with reference to the law which prevailed at the time the policy in question was issued.

"Under policy providing for payment of sick benefits in case of total disability from performing usual work, requirement that insured shall by reason of illness be strictly and continuously confined within house under care of qualified physician is evidentiary only of total incapacity and is not a prerequisite to recover for total incapacity." Federal Surety Co. v. Waite, 297 S.W. 312 (Fort Worth, Tex.Civ.App., 1927, writ dism.). To the same effect see Provident Ins. Co. v. Shull, 62 S.W.2d 1017 (Amarillo, Tex.Civ.App., 1933, no writ hist.) followed by American Casualty Co. v. Horton, 152 S.W.2d 395 (Galveston, Tex. Civ.App., 1941, writ dism.).

The above cases represented the case law in Texas from the year 1927 until 1960, at which time the Texas Supreme Court in the case of United American Insurance Co. v. Selby, 161 Tex. 162, 338 S.W.2d 160 (1960) refused to follow the holdings in the Waite, Shull, Horton and other cases. The Selby case did not in our opinion specifically change the rule of construction adopted and followed by Texas concerning the construction to be placed upon the phrase, "continuously confined within doors", and similar provisions. It made no reference to the case of Southern Surety Co. v. Diercks, 250 S.W. 755 (Texarkana, Tex.Civ.App., 1923, ref.) holding that, " 'Confinement to the house does not necessarily mean a constant literal restraint within the house; and an occasional visit to the office of her physician for treatment, or taking exercise and walking as a part of the plaintiff's treatment would not necessarily mean that she was not at such times confined to her house as contemplated by the policy or contract in evidence in this case.' "

Diercks was followed and cited with approval in the case of National Central Life Insurance Company v. Anderson, 443 S.W. 2d 786 (Texarkana, Tex.Civ.App., 1969, no writ hist.).

The policy of insurance in question requires that the insured be under the care of a legally licensed physician. It is undisputed that he was under such care. A reasonable construction to be placed upon such requirement would be to speed his recovery. The appellant expected and the policy required the insured to comply with this provision. It would be unreasonable for insured to be under the care of a physician and refuse to follow his advice. The undisputed evidence shows that as a part of the therapeutic treatment in heart cases it was extremely important for the insured to take regular walks and regular drives in good weather. It was undisputed that occasional trips out of town were recommended and important for therapeutic reasons.

To accept the argument advanced by the appellant in this cause would be tantamount to holding that an insured who complies with the instructions and advice of a physician which he is required under the policy to have could not recover loss of income due to total disability. We are familiar with cases which deny recovery by a plaintiff who refuses or fails to heed the advice of his physician.

The term "within doors" could reasonably be construed to mean that an assured, because of his illness, would be unable to carry on his usual and normal outside activities. It could not be construed to mean confinement as defined in the code of criminal procedure.

The question would seem to be whether or not he is "substantially confined." The facts in this case reflect that substantially all outside activities of appellee have been discontinued. He has had to live a secluded life since 1955. He has had several severe heart attacks. He still suffers from advanced progress of the illness. His doctor has advised him for therapeutic reasons,

to walk as far as he could each day, to take trips in his automobile, and to occasionally go away for a change of scenery. Appellless, because of the selerity of his illness, has not always been abl to comply with his doctor's suggestions.

■ There is ample evidence upon which the trial court could find that Laney, because of his illness, would be required to substantially confine himself within doors within close reach of his armchair and bed. Laney's condition has been continuous and his confinement has been continuous since his illness.

The illness which afflicted the appellee required him to avoid inclement weather, the heat of summer, and the cold of winter, The illness prevented him, because of pain, shortness of breath or anxiety, from going about normal outside activities a substantial portion of the time. All of his activities have been under the direction of his physician.

See the Annotation in 29 A.L.R.2d, pages 1408–1448, and the cases cited there.

Typical of the cases cited under the Annotation is the case of Metropolitan Plate Glass & C. Ins. Co. v. Hawes' Ex'x, 150 Ky. 52, 149 S.W. 1110 (1912, no writ hist.) holding that, ". . . It would be unreasonable to hold that the language of the policy required him to be necessarily and continuously confined in the house at all times, when the testimony shows conclusively that he was actually sick as provided in the contract and the taking of fresh air was directed by his physician for his benefit and when his staying out of doors would have a tendency to shorten the duration of his sickness, and thus lessen the amount of appellant's liability."

Appellant's points three and four are overruled.

Appellant by its point five contends there is no evidence to support the finding of the trial court that the contract in question was entered into between the parties with refer-

ence to any interpretation thereof in accordance with the case of Federal Surety Co. v. Waite, 297 S.W. 312 (Fort Worth, Tex.Civ. App., 1927, writ dism.).

By points six, seven and eight, respectively, the appellant asserts that the court erred, as a matter of law, in holding (6) that the contract in question was not to be interpreted in accordance with the law merely because the policy was issued at a time when certain decisions of the courts of this State, which were later overruled, interpreted such contracts in a manner different from what the Supreme Court of Texas has subsequently held to be the law; (7) that the "parties intended that said policy of insurance would indemnify the Plaintiff in the sum of $400.00 per month if such sickness should totally and continuously disable Plaintiff and require the personal care and regular attendance of a legally qualified physician" as such holding completely ignores the clear and unambiguous requirement of the policy that the insured must be necessarily confined continuously within doors; (8) that appellant's supplemental pleadings constituted an admission that the policy in question was treated by appellant as being interpreted in accordance with the case of Federal Surety Company v. Waite, 297 S.W. 312.

Appellant's points five through eight will be discussed together.

The evidence in this case shows that the contract of insurance sued upon was issued on June 19, 1952. At that time the law of our State was that provisions relied upon by the appellant to defeat the insured's recovery had been held by our courts to be evidentiary only, and that under such provisions the insured was entitled to recover on a showing of total disability.

■ In Volume 17 C.J.S. Contracts § 22, p. 626, it is said, "The law in force at the time a contract is entered into governs the validity and construction thereof. Every contract is to be considered as having been made with reference, and subject, to the law in force at the time of its making;

hence, the rule, as it is usually stated, is that a contract is governed by, and its validity or construction depends on the state of the law at the time it was entered into. Similarly, a contract will be construed according to the law of the state, as interpreted by its courts, at the time the contract was made, and not in accordance with subsequent decisions to the contrary."

The rule is further clarified in 17A C.J.S. Contracts § 330, p. 295.

See also 13 Tex.Jur.2d, pages 352–354, Section 165, stating that, "As a general rule, it may properly be said that laws in existence at the time and place of making of a contract, as well as laws then existing at the place where the agreement is to be performed, constitute an integral part of the contract, just as if they had been expressly incorporated therein. Indeed, it is conclusively presumed that the parties to the contract knew the law and contracted with reference to it, and the agreement will therefore be construed with regard to such laws as were then in existence. Accordingly, if a contract is in writing, an obligation imposed on a party by law, though not expressly incorporated in the instrument, is nevertheless deemed to be a part of it and thus constitutes a written obligation that is governed by the statute of limitations applicable to written agreements. Furthermore, as a general rule a right conferred by existing law, when it constitutes part of an agreement by implication, may not be defeated by the subsequent amendment of the law." See authorities cited under Section 165 of 13 Tex.Jur.2d.

The policy of insurance in question provides that if any time limits with respect to giving notice of claim or furnishing proof of loss is less than that permitted by the law of the State in which the insured resides at the time the policy was issued, the law of the State shall control.

The undisputed evidence reflects that in 1959 some seven years after the insurance contract was entered into between the parties, the appellant had ceased to make the $400.00 per month payments under the policy here involved and as a result Cause No. 24,360 was filed against it in the District Court of Denton County, Texas. A deposition was taken in the cause on August 14, 1959, in the home of Laney. On said occasion, the attorney for appellant went into detail with Laney as to his activities from the time of his heart attack on May 17, 1955. Therefore, the appellant was well informed as to all of appellee's activities from the date of his heart attack in 1955 to the date of the deposition in 1959.

After such payments had been temporarily stopped by the company, and after they took Mr. Laney's deposition the appellant had full knowledge that Laney was taking walks, taking short drives in the automobile, picking up his personal mail, dropping his son off to school, getting the maid, and engaging in other outside activities which were incidental to the short trips recommended by the doctor. The appellant, with such knowledge, assumed liability under the policy, by making all back payments. Further, it continued to pay all payments as they accrued until May 22, 1962.

In its supplemental answer the appellant in paragraph 2 said, "Your defendant would show the court that the defendant paid to plaintiff the sum of $10,000.00 for alleged disability and confinement within doors based on the case of Federal Surety Co. v. Waite, 297 S.W. 312, which stated that confinement within doors is merely evidentiary of disability.

"That subsequent thereto the case of United American Insurance Company v. Selby was rendered by the Supreme Court of the State of Texas in [161 Tex. 162] 338 S.W.2d 160 in which said case the Supreme Court of the State of Texas specifically overruled the Waite Case stating that the same was 'not based on sound reason'."

■ In holding as we do that the policy of insurance in question is to be construed under the law which prevailed at the time of its issuance we would emphasize that no

new contract was ever made between the parties to this suit subsequent to Selby nor was there any new agreement that subsequent rights would be controlled thereby.

Points of error Nos. 5, 6, 7 and 8 are overruled. All points of error raised on this appeal having been overruled we thereby affirm the judgment of the trial court.

Affirmed.